[Crim. No. 7553. Second Dist., Div. One. Aug. 31, 1961.]

THE PEOPLE, Respondent, v. RICHARD STONE, Appellant.

Harry E. Weiss and Daniel N. Busby for Appellant.

Stanley Mosk, Attorney General, and S. Clark Moore, Deputy Attorney General, for Respondent.

LILLIE, J.—Stone and the defendants Cress were charged by information with conspiracy to commit forgery (count I), forgery of an operator's license in violation of section 4463 of the Vehicle Code (count II) and forgery of a fictitious name (count III). The matter having been submitted on the transcript at the preliminary hearing, Stone was found guilty of the offenses charged in count I and II and not guilty on count III. He appeals from the judgment (granting probation) and the sentence.

The facts as revealed by the record are as follows: On December 21, 1959, Officer A. M. Barr, assigned to the forgery detail of the Los Angeles Police Department, received a telephone call from one Ansoorian, the proprietor of a Los Angeles printing establishment. According to Ansoorian, he had received an order to print 500 checks on the Advance Rug and Upholstery Cleaners. Since the person placing the order failed to furnish the name of the drawee bank, Ansoorian contacted Advance Rug and was told that no such order had been given. Barr and another officer then called on Ansoorian; the latter told them that he had again heard from the person placing the order, and that he (Ansoorian) would receive a bonus if the checks were printed that day on the Security-First National Bank at Santa Barbara and Vermont. Upon contacting the bank, Barr was advised that there was no such account at the branch, nor any arrangements there for credit.

A stake out was established. On December 23, shortly after 1 p. m., Officer Barr observed defendant Lloyd Cress enter

Ansoorian's place of business. A few seconds later Sergeant Kamp, who was on the premises, advised Barr by means of walkie-talkie that Cress had walked in and asked for the checks. After an interval of some three minutes, Cress departed with a small package wrapped in brown paper and entered his car. Barr and other officers then followed Cress. According to Barr, the officers "followed him for approximately one hour up and down every side street in that particular area, through alleys, through parking lots, through gas stations. The defendant would drive up a residential street, pull into a private driveway, park there for about 10 seconds, turn around and back out and reverse the field again going through alleys, down an alley, make a U-turn in the alley and come back out again . . ." Defendant Cress finally drove to 5247 Adams, the address of Replica Photo Shop; he entered the shop between 2:15 and 2:25 and emerged at 3:05. The officers then followed Cress' car until 4:45 when it was lost in traffic.

Officer Barr, it further appears, had observed appellant on two occasions at the Replica Photo Shop; he also discovered that appellant was its owner. A check of police records disclosed that in 1959 appellant, at the same address, had been arrested for possessing and furnishing fictitious operators' licenses and lewd photos.

On January 4, a week or so later, Barr and other officers entered appellant's shop; Barr introduced himself and the other officers, stating they were from "Forgery." Asked if this meant anything to him, appellant answered that it did not. Barr then said: "Sit down. We have something to tell you." The officer then said: "On the 23rd day of December we tailed a man here that had a bunch of fictitious checks that were printed and he came in here for the purpose of having fictitious driver's licenses made . . . He was in here for over an hour and a half . . . Does that mean anything to you?" When appellant replied in the negative, the officer said: "Look, the negatives are around here some place and we want the negatives or the rest of the operator's licenses." Appellant replied: "I haven't got the rest of the operator's licenses. I have got the negative. I will give you that." Appellant was then arrested. He thereupon produced the negative and gave it to Barr; he also identified defendant Lloyd Cress, adding that he was married to defendant Edna Cress who formerly modeled for him.

Subsequently, in response to the officers' inquiry, appellant stated that he had made four or five operators' licenses from the negative. When asked if he knew that Lloyd Cress was going to pass checks with the licenses, appellant replied: "Yes, I think I did." Pressed for an explanation of his answer, appellant said: "Well, I saw some of the checks . . . The first time he came in." Shown four checks (People's exhibits) bearing the imprint "Advance Rug and Upholstery Cleaners," appellant stated that they resembled the checks formerly in the possession of Lloyd Cress; according to appellant, Cress had offered him one of the checks, but appellant declined to accept it. Although protesting that he "didn't forge anything," appellant admitted that he made licenses for Lloyd Cress in the name of Betty Vaughn (a name used by defendant Edna Cress) and Leo Bundy (an alias used by defendant Lloyd Cress); these "white copies" he gave to Lloyd Cress who returned on a later date with the "white copies" signed.

The next day, at police headquarters, appellant made similar admissions relating to the matters just related; defendant Lloyd Cress, who had been taken into custody the previous day, was present on this occasion. Appellant stated that he was not sure of the total number of licenses involved—there might, he said, have been as many as ten.

Incriminating admissions were also made by both of the defendants Cress. Edna, who was likewise taken into custody on June 4, admitted that she had signed the name "Betty Vaughn" on the checks and knew they were no good—as will appear hereinafter, the operators' licenses in question were utilized by her as and for the identification customarily required in such transactions. A paymaster check protector and an operator's license were found in an overnight case, the key to which was supplied by Edna. Lloyd Cress also had a key which fitted the overnight kit. He admitted that he used the name "Leo Bundy" in passing certain of the checks, and he also stated that he and his wife had used the names on five licenses in writing and passing checks.

Four of the checks passed, as noted above, were received in evidence. Three were cashed at various stores by Edna Cress as the payee "Betty Vaughn" and the fourth by Lloyd Cress under the payee's name "Leo Bundy"; all four instruments bore identifying marks which represented the number of the operator's license used. Finally, there was testimony that there was no account at the drawee bank in the name of Advance Rug and Upholstery Cleaners whose name was imprinted on

each check; it was further established that Atlas Rug had given no one, including the appellant, permission to print the checks.

Appellant's argument is presented under a single heading reading as follows: "The trial court was without jurisdiction to proceed to trial on the information for lack of legal commitment for trial." A more satisfactory presentation of his assignments of error would have been achieved if subheadings had been used to describe the specific contentions raised. They are four in number and are discussed but briefly.

First, it is contended that appellant's admissions of guilt were obtained only after he had been illegally detained by the officers who eventually placed him under arrest. Such argument is based upon the testimony of Officer Barr that he told appellant to "Sit down. We have something to tell you." Assuming that this constituted an illegal detention, it is established that a confession obtained while so detained is admissible if voluntarily made. (*People* v. *Bashor*, 48 Cal.2d 763, 765 [312 P.2d 255].) There is nothing in the record suggestive of any coercion by the police officers concerned; appellant did not testify at the preliminary hearing, and the testimony otherwise indicates that the incriminating admissions were freely forthcoming in response to a reasonable inquiry.

As recently noted in *People* v. *Kendrick*, 56 Cal.2d 71, 83-84 [14 Cal.Rptr. 13, 363 P.2d 13], " '[A] confession is not rendered inadmissible . . . by a delayed detention, where the confession is not the product of that detention' [citation]." But, says appellant, he was in fact arrested when the officers told him to "Sit down." It was for the trier of fact to determine whether the statement in question constituted an invitation rather than a command; furthermore, the record does not show that appellant in any way complied with the officers' request or command.

Too, it has been consistently held that police officers have the right to seek interviews with suspects (*People* v. *Tisby*, 180 Cal.App.2d 574, 577 [5 Cal.Rptr. 614], and cases therein cited), and it is also the law that the police may enter a business establishment without a search warrant. (*People* v. *Roberts*, 182 Cal.App.2d 431, 437 [6 Cal.Rptr. 161].) Therefore, if the appellant did not wish to comply, all he had to do was to say so—a simple objection being sufficient (*People* v. *Zavaleta*, 182 Cal.App.2d 422, 425 [6 Cal.Rptr. 166]); instead, he told the officers: "I haven't got the rest of the operator's licenses. I have got the negative. I will give you

that." When such statement was made, being an admission of complicity, the officer reasonably reached the conclusion that appellant had committed a felony, and the arrest followed.

█ Even before the actual arrest, appellant offered to give the officers the only physical evidence obtained; such consent negatives any claim that an illegal seizure occurred (*People* v. *Gorg,* 45 Cal.2d 776, 782 [291 P.2d 469]); and, of course, whether the consent was voluntarily given was for the trier of fact. (*People* v. *Campos,* 184 Cal.App.2d 489, 494 [7 Cal. Rptr. 513].)

*Rios* v. *United States,* 364 U. S. 253 [80 S.Ct. 1431, 4 L.Ed. 2d 1688], and *Henry* v. *United States,* 361 U. S. 98 [80 S.Ct. 168, 4 L.Ed.2d 134], are relied on by appellant. Factually neither is in point, since the arrest in the matter at bar was not made until after appellant had admitted the commission of a crime. Also cited by appellant is *People* v. *Sanders,* 46 Cal.2d 247 [294 P.2d 10], holding that the fact that a person is a past offender (in this case, appellant's previous arrest for possessing fictitious driver's licenses) is not probable cause to arrest him; as shown above, however, there were other circumstances warranting the action taken here by the arresting officers.

█ Appellant's second point challenges the sufficiency of the evidence to support the finding of guilt both as to the conspiracy count and the substantive crime involved in the conspiracy that he did "make, forge and counterfeit . . . an operator's license with intent to represent the same as issued by the Department of Motor Vehicles," contrary to section 4463 of the Vehicle Code. The claim is without merit. █ As to the substantive offense, "the crime of forgery consists either in the false making or alteration of a document without authority or the uttering (making use) of such a document with the intent to defraud . . . the test is whether upon its face it will have the effect of defrauding one who acts upon it as genuine. [Citations.]" (*People* v. *McKenna,* 11 Cal.2d 327, 332 [79 P.2d 1065].) █ There can be no doubt that the various persons and firms victimized here were disposed to, and did, act upon the fictitious licenses as being genuine; they parted with their money or property accordingly. The negative given by appellant to the officers, and used in making the licenses, was received in evidence; also received were several licenses made from this negative. Close examination of these exhibits discloses certain matching flaws, directed to our attention by the attorney general, on both

the negative and licenses. Ten such flaws are listed in respondent's brief; the one most readily discernible is the word "CALIFORNIA" in the title of the license—the letter "I" is chopped off, which flaw is duplicated in the negative. Even if the mere existence of these patent forgeries was not sufficient to show that someone forged them, all that is required to show the corpus delicti of a crime is "slight evidence" or "some evidence." (*People* v. *Hassen,* 144 Cal.App.2d 334 [301 P.2d 80].) Once the corpus delicti has been shown, the trier of fact may then consider the admissions of the defendant connecting him with the crime (*People* v. *Wade,* 53 Cal.2d 322, 330 [1 Cal.Rptr. 683, 348 P.2d 116]) ; as stated above, appellant admitted making the driver's licenses for Lloyd Cress.

 As for the conspiracy count, the corpus delicti was established by the existence of the forgeries just mentioned, the fact that appellant was visited by Lloyd Cress for an hour or so at the former's place of business, and appellant's possession of the negative used to produce the fictitious licenses found at the Cress apartment. Although such evidence was circumstantial in nature, it is settled that a conspiracy may be established by circumstantial evidence. (*People* v. *Andrews,* 165 Cal.App.2d 626, 634 [332 P.2d 408].) In the case just cited, we again called attention to certain principles relating to criminal conspiracy—they are here applicable and need not be repeated. Once the corpus delicti has been shown, the court may then consider the defendant's admissions. (*People* v. *Wade, supra,* 53 Cal.2d 322, 339.)

 Here appellant admitted making the licenses for Lloyd Cress; he also admitted that the licenses were made for the purpose of passing checks; and likewise admitted was the fact that he made "white" copies of the forgeries which were given unsigned to Lloyd Cress and later returned by him with signatures thereon. The evidence amply supports that finding that appellant participated in a criminal conspiracy which had for its object the commission of the substantive offense set forth in count II, namely, the forgery of an operator's license contrary to the provisions of section 4463 of the Vehicle Code.

 Appellant next contends that there was no legal commitment in the present case; he does so despite the fact no motion was made under section 995, Penal Code, nor did he raise the question at the trial. Section 995 provides that an information may be set aside if the defendant has been committed without probable cause; in section 996, Penal Code, it

is provided as follows: "If the motion to set aside the indictment or information is not made, the defendant is precluded from afterwards taking the objections mentioned in the last section." In *People* v. *Poe*, 174 Cal.App.2d 593, 596 [344 P.2d 870], it was pointed out that a section 995 motion has been described by the Supreme Court as "the exclusive method provided by law for challenging the legality of the commitment" (*In re Berry*, 43 Cal.2d 838, 844 [279 P.2d 18]), and failure to make such motions constitutes a waiver of any objection to the insufficiency of the evidence at the preliminary hearing. Appellant nevertheless relies on *People* v. *Rosborough*, 178 Cal.App.2d 156 [2 Cal.Rptr. 669], for the proposition that the question of illegal commitment is jurisdictional and may therefore be raised for the first time on appeal. While there is language in that case supportive of appellant's proposition, it is clearly dictum; furthermore, as pointed out above, there was sufficient evidence to justify appellant's conviction as set forth in the judgment below. Certainly, a reversal is not warranted on the basis of appellant's argument.

As his final point, appellant claims that the committing magistrate erroneously received his admissions in evidence before the proof on the corpus delicti. It is elementary that the court is empowered to control the order of proof; even if the regular order of proof is not followed, there is no error if the corpus delicti is later established (*People* v. *Mehaffey*, 32 Cal.2d 535, 548 [197 P.2d 12]) ; and, of course, in the present case the corpus delicti of each crime was shown.

The attempted appeal from the sentence is dismissed (*People* v. *Gallardo*, 41 Cal.2d 57, 60 [257 P.2d 29]) ; the judgment (order granting probation) is affirmed.

Wood, P. J., and Fourt, J., concurred.