[Crim. No. 7106. First Dist., Div. One. June 18, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. LEO H. GARCIA, Defendant and Appellant.

Victor C. Dahman, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci and Timothy G. Laddish, Deputy Attorneys General, for Plaintiff and Respondent.

MOLINARI, P. J.—Defendant appeals from a judgment of conviction, following trial by the court, of possession of marijuana. (Health & Saf. Code, § 11530.) His sole contention on appeal is that the marijuana cigarettes which were admitted into evidence were procured by means of an unconstitutional search and seizure. For reasons set out below, following a narrative of the pertinent facts, we reject this contention and affirm the judgment.

At approximately 11:15 on the evening of June 19, 1967, Thomas Edwards, who was manager of the Fox Court apartments in Berkeley, came around the back of the apartments after a trip to a storeroom. At this time he observed defendant looking through the window of one of the apartments. This apartment had been the subject of prior burglaries. Thinking that defendant intended to burglarize the apartment, Edwards called out to him. Defendant looked at Edwards and then ran into a tunnelway which ran through the apartment building. Edwards then approached defendant and asked him

what he was doing there. Defendant replied that he was looking for a friend by the name of Jerry. Edwards informed him that no one by the name of Jerry resided in any of the apartments but defendant maintained that Jerry lived "up in the front." Edwards then asked defendant to show him precisely where Jerry lived and the two men next walked to the front of the apartment complex. When they got to the front, defendant observed that Jerry's car was gone and that therefore he must not be at home. About this time Edwards noticed that defendant had on black cloth gloves. Following further debate as to whether or not a Jerry resided in the apartment building, Edwards took defendant by the arm and led him back toward his own apartment. Defendant asked what Edwards intended to do. When Edwards answered, "I think we had better call the police," defendant tried to break away and a fight followed. Edwards' brother appeared at this time and assisted in taking defendant upstairs to the manager's apartment. During the struggle, defendant hit Edwards in the chest and in the arm. Edwards had his wife call the police and he continued to hold defendant until the police officers arrived about 10 minutes later.

When the police officers arrived, Edwards related what had happened. Pursuant to the advice of the officers Edwards then placed defendant under citizen's arrest. Thereafter two of the officers searched defendant in order to ascertain if he possessed any weapons. In the course of the pat-down search, one of the officers felt some broken glass in the right front pocket of defendant's shirt. Recognizing that broken glass can be used as a weapon, the officer reached into this pocket. He removed some pieces of glass, a pair of broken eyeglasses and several cigarettes, including some that were hand rolled. Gesturing toward the cigarettes, defendant stated, "Those joints are no good, man. That's illegal search and seizure." Because some of the cigarettes appeared to be marijuana, one of the police officers placed defendant under arrest for possession of marijuana.

Defendant's motion to strike the evidence obtained in the search was denied. ▮▮▮ In contending that the evidence was obtained as the result of an unconstitutional search and seizure, defendant argues that the citizen's arrest was illegal; that there was no arrest by the police officers before the search and no probable cause for such arrest; and that consequently the search cannot be justified as incident to a lawful arrest.

■ Pursuant to the provisions of Penal Code section 837[1] Edwards, as a private citizen, had a right to arrest defendant for a public offense committed or attempted in his presence. The term "public offense" includes misdemeanors. (§§ 15, 17; *People* v. *Sjosten,* 262 Cal.App.2d 539, 543 [68 Cal.Rptr. 832].) Defendant argues that no such public offense was committed in the presence of Edwards and that he therefore lacked the requisite authority to arrest. The People, on the other hand, contend that defendant committed in Edwards' presence the felony of attempted burglary (§§ 459, 663), and the following misdemeanors: disorderly conduct (§ 647, subd. (g)); trespass (§ 602); and assault and battery (§§ 240, 242). We agree with the People's contention.

Adverting to the crime of attempted burglary, we note the following language in *People* v. *Cloninger,* 165 Cal.App.2d 86, 88 [331 P.2d 441]: "Burglary is the entry into a building with intent to commit theft or any felony. An attempt is committed by a direct but ineffectual act toward the commission of the burglary, coupled with the specific intent to commit the burglary. [Citation.] The intent may be inferred from the circumstances." The Supreme Court in *People* v. *Werner,* 16 Cal.2d 216, 221-222 [105 P.2d 927], defined the difference between preparation and actual attempt thusly: "The preparation consists of devising or arranging the means or measures necessary for the commission of the offense, while the attempt is the direct movement toward its commission after the preparations are made. In other words, to constitute an attempt the acts of the defendant must go so far that they would result in the accomplishment of the crime unless frustrated by extraneous circumstances. [Citations.]" (See also *People* v. *Gallardo,* 41 Cal.2d 57, 66 [257 P.2d 29].)

In *People* v. *Davis,* 24 Cal.App.2d 408 [75 P.2d 80], a conviction of attempted burglary was upheld where the defendant was seen at night in front of a bedroom window of an inhabited dwelling with his hands upraised towards the window, where he ran away when asked what he was doing, and where there were valuable articles on the bed in the room. Similarly, in *People* v. *Lyles,* 156 Cal.App.2d 482 [319 P.2d 745], a conviction for attempted burglary was sustained under the following circumstances: At about 4 o'clock in the morning a police officer saw the defendant move from the

---

[1]Unless otherwise indicated, all statutory references are to the Penal Code.

corner of a restaurant building "around to the back side"; a screwdriver was found wedged in a door of the building; the lock on the adjoining restroom door was broken; standing inside the door was the defendant wearing gloves; and when the police officer approached the defendant dropped the paper bag he was carrying and then dropped the gloves.

In the light of the foregoing we hold that the public offense of burglary was attempted in the presence of Edwards. Defendant's presence upon premises upon which he had no visible or lawful business, his looking through the window of an apartment, his attempt to flee when Edwards approached him; his equivocal conduct when queried as to his presence on the premises; his wearing of gloves, a hand covering commonly used by burglars to avoid leaving fingerprints, and his attempt to flee when told that the police would be called, justify the reasonable inference that the requisite intent existed. As to the required overt act, the evidence went further than mere preparation and indicated acts which would have resulted in the crime of burglary had defendant not been interrupted by Edwards' appearance on the scene. Defendant's acts in approaching the window wearing gloves and looking through the window of the apartment were overt acts proceeding toward the consummation of the substantive crime.

Defendant also committed in the presence of Edwards the offense of disorderly conduct as defined in section 647, subdivision (g) as follows: "Every person who commits any of the following acts shall be guilty of disorderly conduct, a misdemeanor: . . . (g) Who loiters, prowls or wanders upon the private property of another, in the nighttime, without visible or lawful business with the owner or occupant thereof; or who, while loitering, prowling or wandering upon the private property of another, in the nighttime, peeks in the door or window of any inhabited building or structure located thereon, without visible or lawful business with the owner or occupant thereof." Here Edwards observed defendant late at night in the area of one of the private apartments, peering into the window, and ascertained that defendant had no visible or lawful business with any occupant of the building. Although the record is not clear as to the actual ownership of the building where defendant was sighted, the inference is warranted from the description of the property by Edwards that the area was private property. Nothing in the record supports defendant's contention that the area was "open to the public."

.We believe, also, that the evidence suffices to show that a trespass was committed in the presence of Edwards. Section 602, subdivision (j), in pertinent part, provides that a trespass is committed by "entering any lands, whether unenclosed or enclosed by fence, for the purpose of injuring any property or property rights. . . ." The rationale we have utilized in our discussion of the crime of attempted burglary is equally applicable here. The evidence suffices to support a determination that Edwards had probable cause to believe that defendant was on the apartment property for the purpose of interfering with and injuring the property or property rights of the landlord or his tenants. (See *Shakespeare* v. *Zervos,* 262 Cal.App.2d 171, 179 [68 Cal.Rptr. 481].) We note, moreover, that criminal trespass is not an offense necessarily included in the crime of burglary. (See *People* v. *Harris,* 191 Cal.App.2d 754, 758-759 [12 Cal.Rptr. 916].)

When Edwards took defendant by the arm and told him he was going to call the police he effected a citizen's arrest which, as pointed out above, he was justified in making for attempted burglary, disorderly conduct and trespass. (*People* v. *Harris,* 256 Cal.App.2d 455, 459 [63 Cal.Rptr. 849] ; *People* v. *Foster,* 223 Cal.App.2d 275, 277 [35 Cal.Rptr. 760].) At that time it was defendant's duty to remain passive. (*People* v. *Foster, supra*; *People* v. *Score,* 48 Cal.App.2d 495, 498-499 [120 P.2d 62].) When he struck Edwards on the chest and arms it constituted an assault even though defendant's objective may have been escape or withdrawal. (*People* v. *Foster, supra.*) When assaulted Edwards was justified in using such force as was reasonable for defendant's arrest and detention and to enlist his brother's assistance to aid him in making the arrest. (§§ 835, 839 ; *People* v. *Lathrop,* 49 Cal.App. 63, 67 [192 P. 722].) Accordingly, when defendant resisted the arrest and assaulted Edwards he added another crime to those for which he had been arrested. (See *People* v. *Score, supra,* at p. 499.)

Although, from the information supplied by Edwards, the police had reasonable cause to believe that defendant had committed the felony of attempted burglary, and therefore were entitled to arrest him without a warrant (§ 836, subd. 3 ; *People* v. *Gardner,* 252 Cal.App.2d 320, 324-325 [60 Cal.Rptr. 321] ), they elected to treat the arrest as a citizen's arrest and to accept delivery of defendant from Edwards pursuant to section 847. The valid citizen's arrest thus effected by Edwards was not terminated when he turned defendant over to

the police officers. (*People* v. *Harris, supra,* 256 Cal.App.2d 455, 459-460 [63 Cal.Rptr. 849].) ■ Since it was deemed by the officers to be a citizen's arrest a search incident to such an arrest was limited to the search for offensive weapons authorized by section 846.[2] (See *People* v. *Sandoval,* 65 Cal. 2d 303, 311, fn. 5 [54 Cal.Rptr. 123, 419 P.2d 187] ; *People* v. *Martin,* 225 Cal.App.2d 91, 94-95 [36 Cal.Rptr. 924].) In the present case the search was clearly a weapons' search as is authorized by section 846.

We hold, moreover, that irrespective of section 846 the officers, in whose custody defendant was properly delivered, had a right to conduct a reasonable search for weapons for their protection. In *Terry* v. *Ohio,* 392 U.S. 1 [20 L.Ed.2d 889, 88 S.Ct. 1868], the Supreme Court concluded ''that there must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. [Citation.]'' (P. 27 [20 L.Ed.2d p. 909] ; see also *Sibron* v. *New York,* 392 U.S. 40, 66-67 [20 L.Ed.2d 917, 936-937, 88 S.Ct. 1889] ; *People* v. *Graves,* 263 Cal.App.2d 719, 732-735 [70 Cal.Rptr. 509].) In the instant case the officers were entitled to investigate defendant on the basis of information relayed to them by Edwards concerning his late-at-night activities on the premises, his evasiveness, and his struggle to escape. (See *People* v. *Berutko,* 71 Cal.2d 84, 90 [77 Cal.Rptr. 217, 453 P.2d 721] ; *People* v. *Yeoman,* 261 Cal. App.2d 338, 342 [67 Cal.Rptr. 869] ; *People* v. *Machel,* 234 Cal.App.2d 37, 45-46 [44 Cal.Rptr. 126] ; *People* v. *Cove,* 228 Cal.App.2d 466, 469-470 [39 Cal.Rptr. 535].) It can also be noted that the officers knew of prior burglaries in the building. They were consequently justified in a belief that defendant might be armed and might be dangerous to the officers and to the other persons present in the apartment.

Under the doctrine of the *Terry* case, the manner of conducting an otherwise justified precautionary search is of vital

---

[2]Section 846 reads in full: ''Any person making an arrest may take from the person arrested all offensive weapons which he may have about his person, and must deliver them to the magistrate before whom he is taken.''

importance. The search and seizure must be reasonably related to the justification. (392 U.S. at pp. 29-30 [20 L.Ed.2d at pp. 910-911].) In the instant case the circumstances disclose only a pat-down search of defendant's person reasonably related to a search for weapons. (See *People* v. *Jackson,* 268 Cal.App. 2d 306, 310 [74 Cal.Rptr. 40].) The fact that the search turned up marijuana in the pocket of defendant's shirt which was being searched for weapons after some broken glass had been felt in the pat search, does not render the search illegal or preclude the use of the contraband in evidence against defendant. (*People* v. *Kraps,* 238 Cal.App.2d 675, 680 [48 Cal.Rptr. 89] ; *People* v. *Brooks,* 234 Cal.App.2d 662, 667 [44 Cal.Rptr. 661] ; *People* v. *Weitzer,* 269 Cal.App.2d 274, 293 [75 Cal.Rptr. 318].)

The judgment is affirmed.

Sims, J., and Elkington, J., concurred.