[Crim. No. 20954. Second Dist., Div. Three. Aug. 3, 1972.]

THE PEOPLE, Plaintiff and Respondent, v.
RONALD LEROY WILKINS, Defendant and Appellant.

## COUNSEL

Thomas A. Diamond for Defendant and Appellant.

Evelle J. Younger, Attorney General, Herbert L. Ashby, Chief Assistant Attorney General, William E. James, Assistant Attorney General, Russell Iungerich and Daniel W. McGovern, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**ALLPORT, J.**—By information defendant was charged with a violation of section 4463 of the Vehicle Code in that on January 28, 1971, he wilfully and unlawfully had possession of a counterfeited registration card with intent to prejudice, damage, cheat, and defraud the state Department of Motor Vehicles. Defendant pleaded not guilty, his motion under Penal Code section 1538.5 was heard and denied, and the cause submitted on the testimony contained in the preliminary hearing transcript subject to the usual stipulations. Defendant was found guilty as charged. The offense was declared to be a misdemeanor. Proceedings were suspended and de-

fendant granted probation for a period of two years upon condition, among others, that he pay a fine of $100. He appeals from the judgment. An order granting probation is deemed to be a final judgment and is appealable. (Pen. Code, § 1237, subd. 1; *People* v. *Johnson,* 258 Cal.App.2d 165, 166 [65 Cal.Rptr. 441].)

It is contended on appeal that (1) defendant's arrest was illegal thus invalidating the seizure of some 12 automobile registration cards (1971) marked People's One in evidence, and that his section 1538.5 motion should have been granted; (2) the possession of blank registration slips is not a violation of section 4463; (3) application of Vehicle Code section 4463 in the instant case would be violative of defendant's constitutional right to due process, and (4) there is no evidence to support a finding of intent to defraud.

### The Evidence

On January 28, 1971, Thomas J. Reiss, employed by the University of Southern California as a security officer, while on patrol between 6:40 and 7 p.m., observed defendant in a parking lot on the west side of McClintock, walking around and looking into one or two vehicles. This occurred on the campus. Being aware of a high rate of thefts of property from vehicles in that area, Reiss made a U-turn and went back where he then observed defendant sitting in his 1962 panel truck on the west side of McClintock, which street was encompassed within the campus. The witness approached the vehicle and requested defendant to identify himself. The latter produced a California driver's license and an expired U.S.C. staff employee card. It was getting dark at this time. The officer used a flashlight while talking to defendant. The card bore employee number 964163 and had expired in 1969. Prior to this time Reiss had taken a theft report of some stolen law school books which had later been sold back to the university by a Ronald L. Wilkins, number 964163. Believing defendant to be guilty of the crime of receiving stolen property, Reiss asked Wilkins to accompany him to the campus police office for questioning as to the books and to get the situation resolved. Defendant was not notified that he was under arrest but went voluntarily. Since Wilkins was under suspicion of receiving stolen property the officer gave him his *Miranda* rights.[1] Defendant stated he understood and would talk. Upon arrival at the office defendant said he had received the books from a friend to sell because the friend did not have an I.D. card. De-

---

[1] *Miranda* v. *Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].

fendant then denied knowing the books had been stolen but said he would pay back the money ($17). At this time Reiss notified the Los Angeles Police Department. Approximately one hour elapsed between the time defendant was first questioned until the police arrived, at which time Reiss advised the officers of the stolen books.

Bradley McGrath, a police officer for the City of Los Angeles, testified that he responded to a call to go to U.S.C. where he met a security officer who advised him of observing defendant "prowling numerous vehicles," that investigation had disclosed defendant was a suspect in a theft from the university and that the card defendant had shown was used in the selling of the property back to the university. He was shown a crime report to this effect. McGrath placed defendant under arrest for receiving stolen property, placed him in the police vehicle and returned with his partner Janowicz to where defendant's 1962 Chevrolet panel truck was parked. As he approached the truck it was night. The officer shined his flashlight inside and observed blank vehicle registrations lying on the seat. He opened the door and saw blank sheets of selective service cards, a paper describing how to make a California driver's license and numerous tools in the vehicle. People's One was observed before the car door was opened. Defendant was then handcuffed and taken to the station and booked. L. A. Le Fluer, a special investigator for the state Department of Motor Vehicles testified that People's One were not authentic registration cards from the department and explained why. He stated that they contained the same format or information as is shown in the regular registration document for the department, including the seal but were fraudulent copies. People's One was further described as a blank format of the vehicle registration card. No information such as name of owner, description of vehicle, license and tab numbers were on the forms and as such could not have been issued by the department.

### Discussion

It is first argued that the contraband should have been suppressed as its seizure was the result of an illegal detention or search. We do not agree. It appears from the record before us that at the time and place in question Officer Reiss was in fact a private citizen employed by a private university in the protection of private property. The events all occurred on property of the university. Penal Code section 837 subdivision 1 provides that a private person may arrest another for a public offense committed or attempted in his presence, and subdivision 3 provides that he may do so when a felony has in fact been committed and he has reasonable cause for believing the person arrested has committed it. In

*People* v. *Terry,* 2 Cal.3d 362, 393 [85 Cal.Rptr. 409, 466 P.2d 961], reasonable cause is defined as that state of facts as would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime. Each case must be decided on the facts presented at the time. Penal Code section 647, subdivision (g) provides: "Every person who commits any of the following acts is guilty of disorderly conduct, a misdemeanor: . . . (g) Who loiters, prowls, or wanders upon the private property of another, in the nighttime, without visible or lawful business with the owner or occupant thereof." ■ Public offense includes misdemeanors. (*People* v. *Garcia,* 274 Cal.App.2d 100, 103 [78 Cal.Rptr. 775]; *People* v. *Johnson,* 271 Cal.App.2d 51, 53 [76 Cal.Rptr. 201].) Section 496 provides that the receiving of stolen property is a felony unless determined to be otherwise by the court, district attorney or grand jury. ■ Assuming arguendo that the detention of defendant by Officer Reiss was tantamount to an arrest by a private citizen, the observation of defendant upon the private property of the university at night without visible or lawful business with the owner in an area of a high rate of thefts of property from automobiles permits of a conclusion that the officer had reasonable cause to detain for investigation and to arrest for a violation of section 647, subdivision (g). (Cf. *People* v. *Garcia, supra; People* v. *Sjosten,* 262 Cal.App.2d 539, 543 [68 Cal.Rptr. 832].) Furthermore, it appears clear that the information in the possession of Officer Reiss pertaining to the theft of books as disclosed in the crime report, coupled with the identification of defendant at the time of his original detention as being the person who sold the books back to the university, gave Reiss reasonable cause to believe that a felony had in fact been committed (receiving stolen property) and that defendant had committed it. Defendant argues that since Officer Reiss was not a peace officer, it was incumbent upon the People to prove that a felony contemplated by section 836 had in fact been committed. In *People* v. *Burgess,* 170 Cal.App.2d 36, the court said at pages 40-41 [338 P.2d 524]: "The authority of a private citizen to make an arrest is spelled out in Penal Code, section 837, as follows: 'A private person may arrest another: 1. For a public offense committed or attempted in his presence. 2. When the person arrested has committed a felony, although not in his presence. 3. When a felony has been in fact committed, and he has reasonable cause for believing the person arrested to have committed it.'

"In *Coverstone* v. *Davies,* 38 Cal.2d 315, 320 [239 P.2d 876], the Supreme Court construed former section 836, subdivision 1, of the Penal Code (identical in terms with present § 837, subd. 1) and expressly declared that an arrest by a peace officer was authorized '. . . when

"circumstances exist that would cause a reasonable person to believe that a crime had been committed in his presence." ' In view of the identical language employed in section 837, subdivision 1, of the Penal Code, it would appear that a private citizen may arrest another when circumstances exist which would cause a reasonable person to believe a crime had been committed in his presence. (See also *People* v. *Score,* 48 Cal. App.2d 495 [120 P.2d 62]; *Hill* v. *Levy,* 117 Cal.App.2d 667 [256 P.2d 622].)

"Without question, the evidence above recited is more than adequate to sustain the trial court's implied determination that there was probable cause for the investigators' actions. They had every reason to believe that when their decoy, Bobrick, gave the prearranged signal, the driver's license had been given in exchange for the money paid and without the required tests. Indeed, the unusual circumstance here revealed is the jury's action in acquitting appellant on this count. However, the acquittal, or conviction, of appellant has no bearing on the legality of the arrest. As stated in *Coverstone* v. *Davies, supra,* 38 Cal.2d 315, 319: 'The fact that [the persons arrested] were exonerated in the criminal proceeding has no bearing upon the legality of the arrest. (Cf. *Neves* v. *Costa,* 5 Cal.App. 111, 118 [89 P. 860]; *Wilson* v. *Loustalot,* 85 Cal.App.2d 316, 325 [193 P.2d 127], to the effect that the finding of guilt in the subsequent criminal proceeding cannot legalize an arrest unlawful when made. The converse would appear to be equally true.)' " It follows that proof of the commission of the felony is not necessary. Pursuing the matter further we note that Officer Reiss did not seize the contraband in this case. Upon arrival of the police officer McGrath, Reiss advised McGrath of the facts leading up to defendant's detention. The observations made by Reiss, coupled with the statements of defendant to him may be classed as information conveyed by a citizen informer to a police officer and, under the circumstances, was such as to give Officer McGrath reasonable cause to arrest defendant. (Pen. Code, § 836, subd. 3.) In *People* v. *Guidry,* 262 Cal.App.2d 495, the court said at 497-498 [68 Cal.Rptr. 794]: "There is probable cause for an officer to arrest if the information that was acted upon would cause a reasonably prudent man to believe and conscientiously entertain an honest and strong suspicion that the accused is guilty. (*People* v. *Ingle* (1960) 53 Cal.2d 407, 412-413 [2 Cal.Rptr. 14, 348 P.2d 577]; *People* v. *Chacon* (1963) 223 Cal.App.2d 739, 742 [35 Cal.Rptr. 799].)

"In the case at bench the evidence consists mainly of information supplied by Mrs. Marshall. Information from a known informer of unproved reliability is relevant on the issue of probable cause but it is ordinarily not enough. (*People* v. *Talley* (1967) 65 Cal.2d 830 [56 Cal.Rptr. 492,

423 P.2d 564].) However, the situation in which a private citizen informs the police of criminal activities is different from information given by a mere informer. This court recently held in *People* v. *Lewis* (1966) 240 Cal.App.2d 546 [49 Cal.Rptr. 579], that police officers may act on the observations of private citizens who report crimes committed in their presence. Such a citizen who observes criminal activity is more than a mere informer and tests of reliability that must be applied to experienced stool pigeons do not necessarily apply to every private citizen who aids the police. (See also *People* v. *Barcenas* (1967) 251 Cal.App.2d 405 [59 Cal.Rptr. 419].)" (See also *People* v. *Baker,* 12 Cal.App.3d 826, 841 [96 Cal.Rptr. 760]; *Pollock* v. *Superior Court,* 272 Cal.App.2d 548, 552 [77 Cal.Rptr. 565].) Upon receiving this information McGrath in effect re-arrested defendant for the crime of receiving stolen property and took him into custody. The validity of this arrest did not depend on the legality of that made by Officer Reiss. (*People* v. *Solomon,* 1 Cal. App.3d 907, 910 [82 Cal.Rptr. 215] [the latter was not an agent of the police]; *People* v. *Houle,* 13 Cal.App.3d 892, 895-896 [91 Cal.Rptr. 874].) The fact that defendant was subsequently charged with another and different offense did not vitiate the validity of the arrest or arrests. (*People* v. *Superior Court* (*Johnson*), 15 Cal.App.3d 146, 152-153 [92 Cal.Rptr. 916].) There is no merit to the contention that defendant was illegally arrested. This conclusion answers defendant's contention as to Officer Reiss being a police agent. While a search and seizure may ordinarily be justified as incidental to a valid arrest (*People* v. *Terry, supra,* 2 Cal.3d 362, 393), it is unnecessary to do so in this case. Defendant's conduct in and about the vehicles on the parking lot, coupled with the information connecting him with the sale of stolen books, gave Officer McGrath probable cause to believe that defendant's vehicle might contain contraband. He was thoroughly justified in approaching the vehicle with this in mind. The contraband in question was observed by the officer from a position outside of the vehicle with the aid of his flashlight. It was in plain sight on the seat. Under such circumstances no issue of search became involved. (*Coolidge* v. *New Hampshire,* 403 U.S. 443, 465-466 [29 L.Ed.2d 564, 582-583, 91 S.Ct. 2022]; *People* v. *Gurley,* 23 Cal.App.3d 536, 557 [100 Cal.Rptr. 407]; *People* v. *Muriel,* 268 Cal.App.2d 477, 480 [74 Cal.Rptr. 44].) Substantial evidence exists to support factual findings justifying denial of defendant's motion to suppress. Under such circumstances such findings will not be disturbed on appeal. (*People* v. *Lee,* 3 Cal.App.3d 514, 525 [82 Cal.Rptr. 715].)

■ It is argued that possession of the contraband (People's One) was not a violation of Vehicle Code section 4463 in that a blank registration

slip on its face cannot defraud and is not a registration card within the meaning of the section. We do not agree. Section 4463 provides in part that it is a crime for one to have in his possession any counterfeit or false certificate of ownership, registration card or certificate with intent to defraud. Defendant is not charged with the forging of a valid form but rather with possession of a counterfeited registration card. The evidence establishes that the documents in question, while incomplete, were in fact fraudulent copies of the regular registration form prescribed and provided by the department. (Veh. Code, § 1652.) We are unimpressed with the argument that it was the intent of the Legislature to require that the form be completed before it became a registration card or certificate as contemplated by section 4463. The act of completing the form is contemplated by the use of the words "alters, forges, . . . or falsifies" and "altered, forged, . . . or false." The counterfeiting of the form itself is essential before the other acts contemplated by the section may be done. We conclude that possession of the fraudulent form of registration card or certificate itself is sufficient to satisfy the requirement of possession of a counterfeit or false registration card within the meaning of the section. Our conclusion finds support in *People* v. *Stone,* 195 Cal.App.2d 282 [15 Cal.Rptr. 737]. In *Stone* defendant was prosecuted for a violation of section 4463 for forgery of an operator's license. The evidence established that Stone "made licenses" for one Lloyd Cress in the name of Betty Vaughn. He gave "white copies" to Cress who returned later with these copies signed. Stone denied forging anything. In upholding convictions for forgery and conspiracy the court said at pages 288 and 289 as follows: "Appellant's second point challenges the sufficiency of the evidence to support the finding of guilt both as to the conspiracy count and the substantive crime involved in the conspiracy that he did 'make, forge and counterfeit . . . an operator's license with intent to represent the same as issued by the Department of Motor Vehicles,' contrary to section 4463 of the Vehicle Code. The claim is without merit. As to the substantive offense, 'the crime of forgery consists either in the false making or alteration of a document without authority or the uttering (making use) of such a document with the intent to defraud . . . the test is whether upon its face it will have the effect of defrauding one who acts upon it as genuine. [Citations.]' . . .

"Here appellant admitted making the licenses for Lloyd Cress; he also admitted that the licenses were made for the purpose of passing checks; and likewise admitted was the fact that he made 'white' copies of the forgeries which were given unsigned to Lloyd Cress and later returned by him with signatures thereon. The evidence amply supports that finding

that appellant participated in a criminal conspiracy which had for its object the commission of the substantive offense set forth in count II, namely, the forgery of an operator's license contrary to the provisions of section 4463 of the Vehicle Code." Defendant relies upon *People* v. *Bedilion,* 206 Cal.App.2d 262 [24 Cal.Rptr. 19], for the proposition that possession of counterfeit blank documents will not support a conviction of the crime charged in the instant case. This reliance is misplaced. In *Bedilion* defendant was charged with possesssion of forged checks with the intent of completing them to defraud. He had possession of some 300 genuine blank checks. It was determined that the checks were not forged since they contained no date, amount, payee nor signature of payor, hence were incapable of defrauding. Therefore, the crime of possessing forged checks was not established. Although both *Bedilion* and the case at bench involve blank documents not yet completed by forgery, *Bedilion* is distinguishable on the ground that the blank checks were in fact genuine whereas those in the instant case were counterfeit. Vehicle Code section 4463 prohibits possession of both forged and counterfeited registration cards. Defendant also relies upon *United States* v. *Naughten,* 195 F.Supp. 157, which held that insofar as they were blank, counterfeit selective service forms were not counterfeit certificates purporting to be issued pursuant to the Selective Service Act. The crime charged therein was possession of counterfeit certificates *purporting to be issued* pursuant to the Selective Service Act. In *Naughten* defendants contended that such blank forms were not certificates and that they do not purport to have been issued. This contention was upheld. While *Naughten* is factually distinguishable, it being a decision of a lower federal court we are not bound thereby in the interpretation of a state statute. (*People* v. *Bradley,* 1 Cal.3d 80, 86 [81 Cal.Rptr. 457, 460 P.2d 129].) We do not consider *Naughten* persuasive of a conclusion contrary to that reached herein.

■ It is claimed that to construe section 4463 to include possession of counterfeit blank registration cards would, in this case, constitute a denial of due process of law in violation of article I, section 10 of the United States Constitution. It is argued that the statute in question, at least prior to this decision, did not clearly encompass the conduct of defendant and that to convict defendant thereunder would in effect constitute the creation and application of an ex post facto law, thus depriving him of due process in the sense of fair warning that his contemplated conduct constitutes a crime. (*Bouie* v. *City of Columbia,* 378 U.S. 347 [12 L.Ed.2d 894, 84 S.Ct. 1697].) We do not agree. We are constrained to conclude that a mature university student would be aware that the possession of counterfeit blank vehicle registration forms might well be

a crime. A reading of the statute involved and others would clearly advise of that possibility. Penal Code section 472 makes it a crime to possess a counterfeited public seal authorized or recognized by the laws of this state. Due process in this case requires only that an individual have been given fair warning that his contemplated conduct be prohibited by law. The sections referred to herein and others give legislative warning of the criminal nature of the conduct. Common sense supplies the same.

■ Finally it is claimed that there is no evidence that defendant possessed the specific intent to defraud required by the statute. This contention has no merit. Specific intent as an element of a crime may be proved by circumstantial evidence. (*People* v. *Rodriguez,* 272 Cal.App.2d 80, 86 [76 Cal.Rptr. 818]; *People* v. *Williams,* 252 Cal.App.2d 147, 154-155 [59 Cal.Rptr. 905].) The record shows that defendant was in possession of printed sheets of registration cards for 1971. They were in rolls as though they had come off a printing press. There were several forms on a single sheet. He also had possession of blank sheets of selective service cards and a large paper describing how to make a California driver's license. From these facts and others set forth above the trial court could reasonably infer that defendant possessed the requisite intent to defraud.

The judgment (order granting probation) is affirmed.

Schweitzer, Acting P. J., and Cobey, J., concurred.