Betty Lou KEENEY et vir, Appellants,

v.

J. B. ODOM et al., Appellee.

No. 7777.

Court of Civil Appeals of Texas, Beaumont.

Feb. 26, 1976.

Rehearing Denied March 25, 1976.

Curtis Collette, Houston, for appellant.

John W. Lee, Houston, for appellee.

DIES, Chief Justice.

In December 1971 plaintiff below, Betty Lou Keeney, was driving inbound on the North Freeway near Houston (Interstate 45). A wrecker driven by defendant, Wil-

liam J. Kemp, towing a disabled truck was also headed inbound in the same direction of travel as plaintiff. At some point near the 610 exit the truck and wrecker went out of control in front of plaintiff causing her personal injuries and damages. She sued defendant Kemp and others contending the latter's negligence proximately caused the collision in several respects. Trial was to a jury which failed to find defendant Kemp negligent in any respect, and from which plaintiff perfects this appeal. The parties will be referred to as below.

Plaintiff has points complaining of the jury's failure to find defendant negligent as to lookout, speed, brakes, moving from inside lane to outside, moving from outside lane to inside, as being so against the great weight and preponderance of the evidence as to be manifestly unjust. Such points direct us to the entire record which we now proceed to do. *In Re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

Robert Olivo was driving on the far right hand lane, behind of, and in the same direction of, defendant. The freeway at this point has three lanes. "[W]hen he [defendant] crossed in front of me, it was in pretty good shape. But it started rocking." It was a wrecker pulling a refrigerated truck. When Olivo first got on the freeway, defendant was on the "far left-hand side." He then crossed in front of Olivo. "If I hadn't slowed down, he probably would have hit me." Olivo was driving about 45 mph. As soon as defendant crossed in front of Olivo, "I really noticed it was rocking like it wasn't secure." Defendant later started back (left). "[A]ll the way across again. This truck he was pulling was rocking, and it rocked to the point where it turned over. And it went over all the way to the middle esplanade, and then, that's when I saw Mrs. Keeney's [plaintiff's] car coming." There was no other traffic in front. He noticed no cars coming onto the freeway in front of him. He couldn't see anything that would cause the wrecker to go back left because "there

wasn't anything in front of him because he wasn't in there long enough. He just pulled right out." Plaintiff turned into the esplanade when the truck turned over. The whole event happened in less than a minute. He (Olivo) didn't think there was an entrance to the freeway there from which a car could pull ahead of the wrecker. "[A]s the truck was going to the left lane, it was starting to turn over. So, it fell into the lane. So that's when . . . I first caught a glimpse of her [plaintiff] as the truck started to turn over. I could tell she was trying to stop, but there was no way she could. So, she pulled over on the esplanade."

Plaintiff, Betty Lou Keeney, aged thirty-seven, testified she was driving in the left lane, between 11 A.M. and 12 noon on a clear day when she saw the wrecker moving from the right in front of her. It overturned "right in front of me." Just before this, she hit her brakes. The truck was only about two feet in front of her when it overturned. She was driving approximately 60 mph. Ten minutes after the accident she was taken to Parkway Hospital. Her jaw was wired for fracture; later a cystoscopic examination was performed and four teeth were extracted. Her jaw was dislocated; later she had disc surgery and bone fusion in the neck; even later she had back surgery.

Defendant, William J. Kemp, testified he was towing a Borden milk truck from Conroe. It was a 16 foot body. He does not know if he saw plaintiff prior to the collision. About a mile north of the collision site he was in the extreme right lane. He was driving 40–45 mph—slow—because he was pulling a heavy vehicle which had no brakes. At "Crosstimbers" a Javelin pulled on the freeway in front of him. He hit his brakes hard. At this time he was traveling about 30 mph. His "vehicle was quite violently wrenched sideways . . . like the tail wagging of a dog." It was his belief he lost control of his vehicle. Prior to applying the brakes, he does not believe he turned to the left. He released the brakes

and applied power in an attempt to stop the warping. In February 1972 he signed a statement saying, "The wrecker was a Chevrolet that was too small for the truck I was pulling." He had told this to his employers.

After the truck turned over, he drug it a car's length before it stopped. He had driven in the extreme right lane all the way from Conroe. He had "hazard warnings going," was traveling at a slow rate and "would be foolish to be out in some other lane." He never weaved in and out other lanes. He never realized there had been a collision until after he got out of the wrecker, but plaintiff struck the truck before it turned over because he examined the bumper of the truck afterwards.

■ This summarized evidence clearly reveals the sharp distinction between plaintiff's and defendant's versions of the accident. However, puzzling the question of what caused the milk truck to overturn, under our system, plaintiff had the burden of its proof, that it was caused by negligence and that this negligence was the proximate cause of her injuries. To be entitled to recover, the plaintiff must, unaided by presumption, show that the defendant was responsible for the prejudical occurrence. See authorities cited in 40 Tex. Jur.2d *Negligence* § 139 (1962).

Considering this evidence as a whole, we are unable to conclude that the jury's findings were so against the great weight and preponderance of the evidence as to be manifestly unjust.

Other points complain of the jury's failure to find that defendant Kemp loaded and towed a truck which was too heavy for his wrecker; that the trial court erred in admitting the testimony of Harold Benson regarding the maximum gross weight of the wrecker as being hearsay; that the manufacturer's plate would have been the best evidence; that Benson's testimony regarding the estimate weight that could have been safely towed by the wrecker was hearsay.

■ In "Special Issue No. 2" the jury was asked, "Do you find that on the occasion in question, William J. Kemp loaded and towed a truck which was too heavy for his wrecker?" To which, they answered, "No." By instruction then they did not answer subsequent inquiries whether this constituted negligence or proximate cause. Plaintiff urges this finding "was so against the great weight and preponderance of the evidence as to be manifestly unjust." We repeat, in determining this point, we examine the entire record. *In re King's Estate*, supra.

B. J. Dryden, service manager for J. B. Odom (one of the defendants) testified he had been in the wrecker business himself, had driven wreckers, including the one involved in this wreck, a 1967 Chevrolet, one-ton; that at the time of the wreck it was towing an International 1600 milk truck; that prior to the collision in question he personally had driven that wrecker towing a similar truck many times; that he believed it (this wrecker) was proper for hauling the truck; that since the collision, he has continued to use this wrecker to haul similar trucks; that this wrecker has two extra wheels (dual wheels), heavier springs, and plated frame, which ordinary one-ton vehicles do not have. He doesn't know what caused this truck to turn over.

Harold Benson, a Mechanical Engineer, a member of the Society of Automotive Engineers, examined the wrecker and truck involved and testified the load and towing of this milk truck would not have caused the wrecker to exceed its maximum gross vehicle weight [the amount the wrecker can weigh in addition to whatever payload it is carrying.]—as recommended by the manufacturer—or significantly change the handling characteristics of that wrecker.

So, here, clearly, the jury had evidence from which they could draw a reasonable inference that the plaintiff had not proved that the wrecker was overloaded at the time of the accident. See *Gaitan v. Reyes*

*Salvatierra,* 485 S.W.2d 602, 604 (Tex.Civ. App.—San Antonio 1972, no writ). These points are overruled. Having reviewed the record carefully, we are of the opinion that these findings of the jury are not clearly wrong or manifestly unjust.

The remaining points concern the testimony of Harold Benson.

As noted earlier, Benson defined the maximum gross weight as the amount the wrecker can weigh in addition to whatever payload it is carrying. He obtained this from a metal plate on the truck put there by the manufacturer. Plaintiff insists this is hearsay, and the plate itself would be the best evidence of this information. We disagree. This plate attached to the wrecker we regard as a marking on a chattel. See *United States v. Duffy,* 454 F.2d 809 (5th Cir. 1972). See also, *Kansas Pac. Ry. v. Miller,* 2 Colo. 442 (1874).

> " 'If a sign were painted on a house, it would hardly be contended that the house would have to be produced, nor can it be said that the law converts the courtroom into a receptacle for wagons, boxes, tomb-stones.' " (Taken from Appellee's Brief.)

Furthermore, to have removed this plate from the wrecker would probably contravene statutory law. Tex.Rev.Civ.Stat. art. 6687–1 § 49(c)(1) (Supp.1975–1976). Furthermore, the evidence was merely cumulative of other evidence in the record, and its admission was in this instance harmless error under Tex.R.Civ.P. 434.

All points are overruled.

The judgment of the trial court is AFFIRMED.