[Crim. No. 14023. Fourth Dist., Div. Two. Feb. 17, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL MASTIN et al., Defendants and Appellants.

COUNSEL

James Fallman and C. M. Gilman, under appointments by the Court of Appeal, for Defendants and Appellants.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, and Keith I. Motley, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

**GARDNER, P. J.**—In this case we hold that it is a matter of trial court discretion as to whether or not to allow into evidence photographs of inscribed chattels in the face of a best evidence objection.

Michael was convicted of 3 counts of burglary and one of grand theft. Rosemary was convicted of receiving stolen property. Both were convicted of conspiracy and with selling stolen property.

Michael was a blundering burglar. He committed three burglaries and in each case footprints led from the burgled premises to his house. Guns and coin collections were taken. Michael was arrested and some of the stolen property was discovered at his home. Later the police, via an undercover informant, contacted Rosemary and purchased stolen guns and coins from her.

At trial, Michael objected on best evidence grounds to the introduction of photographs of four guns and a knife stolen from one of the homes he was charged with burglarizing. The stolen items were inscribed with the owner's initials, but the inscriptions were not visible in the photographs.

The best evidence rule (Evid. Code, § 1500[1]) precludes the use of other than the original of a writing. ■ Michael contends that since the markings on the guns were writings that only the original guns were admissible. We do not agree.

---

[1]Evidence Code section 1500 provides: "Except as otherwise provided by statute, no evidence other than the original of a writing is admissible to prove the content of the writing. This section shall be known and may be cited as the best evidence rule."

The pictures were not secondary evidence of a writing because no writing was visible in them. The pictures of the guns and knife did not show the owner's initials. The photographs merely depicted the stolen guns and knife and were admissible as such to illustrate the testimony of the burglary victim.

Even if the initials had been visible in the photographs, we would still not consider the photographs secondary evidence of a writing. On the facts of this case we would hold that these inscribed chattels should not be considered writings for purposes of the best evidence rule.

Diligent research reveals no California case that has considered the applicability of the best evidence rule to inscribed chattels. Federal courts and other state courts have consistently held that the rule is either not applicable to inscribed chattels or applicable in the discretion of the trial court.

*United States* v. *Duffy* (5th Cir. 1972) 454 F.2d 809, is the leading federal case. (See Weinstein's Evidence, 5 U.S. Rules (1972) § 1001(1), pp. 1001-1012.) The defendant left his shirt in a car he had stolen. The shirt was imprinted with a laundry mark reading "D-U-F." The defendant objected to testimony concerning the location of the shirt and its inscription arguing that the best evidence rule required production of the shirt itself.

The court held that "[w]hen the disputed evidence, such as the shirt in this case, is an object bearing a mark or inscription, and is, therefore, a chattel *and* a writing, the trial judge has discretion to treat the evidence as a chattel or as a writing. [Citations.] In reaching his decision, the trial judge should consider the policy consideration behind the 'Rule'." (*Ibid.* at p. 812.) The court applied this rule to the marked laundry shirt, holding it not to have required treatment as a writing for essentially two reasons. First, the inscription was simple so that the chance of inaccuracy in perception or memory was minimal. Second, the inscription was not a critical part of the case against the defendant.

State courts have opted for admission of secondary evidence of inscribed chattels with near unanimity. Oklahoma has held that the best evidence rule is limited to situations where the evidence is offered to prove the contents of written documents. (*Wilson* v. *State* (Okla. Crim. 1977) 568 P.2d 1315, 1317 [xeroxed copies of $20 bills].) Texas has ruled that the best evidence rule does not apply to markings on

chattels. (*Keeney* v. *Odom* (Tex. (10 App. 1976) 534 S.W.2d 409, 412 [license plate].) In a case involving plastic credit cards, a Missouri court in *State* v. *Fontana* (Mo.App. 1977) 589 S.W.2d 639, 641-642, points out that the modern tendency is to grant to the trial court a considerable measure of discretion in determining whether the original should be produced if the object is an inscribed chattel. New Jersey holds the best evidence rule "may be applied where chattels can only be identified through the use of identifying marks or numbers." (*State* v. *Murphy* (1964) 85 N.J.Super.Ct. 391 [204 A.2d 888, 892] [serial numbers on tape recorders, adding machines and radios].)[2]

The commentaries generally support the *Duffy* rule.[3] (See e.g., McCormick, Evidence (1954) § 199, pp. 411-412; Weinstein's Evidence, 5 U.S. Rules (1972) § 1001(1), pp. 1001-1012, *supra*; 4 Wigmore on Evidence (Chadbourn rev. ed. 1972) § 1182.) Wigmore succinctly states the problem and the solution: "No court seems to have attempted, and certainly no court has achieved, a satisfactory test for the distinction to be drawn [between inscribed chattels which should and should not be produced...]. There are precedents requiring and precedents not requiring production—precedents often entirely irreconcilable if one were seeking an inflexible rule. But there is no reason for making such a rule; the rational and practical solution is to allow the trial court in [its] discretion to require production of an inscribed chattel wherever it seems highly desirable [to prove] a material fact." (*Ibid.*) (Fn. citing numerous cases omitted.)

McCormick adds that difficulties in connection with production should also be considered. (McCormick, Evidence (1954) § 199, *supra*.) We can visualize situations in which the best evidence rule should not be applicable, such as an inscription on a 30-ton piece of heavy equipment or an item of personal property which should be promptly returned to the owner. "[I]f a sign were painted on a house, it would hardly be contended that the house would have to be produced, nor can

---

[2]For other cases see 94 A.L.R.3d 824.

The only state with a different rule is Louisiana. A statute requires the exclusion of all but the "best evidence" of a fact in criminal cases. (*State* v. *McCrory* (1959) 237 La. 747 [112 So.2d 432, 433-434].) California has clearly chosen to limit the requirement of the "best evidence" to writings. (Evid. Code, § 1500.)

[3]Witkin considers the best evidence rule to be applicable to inscribed chattels in California, but does not discuss the extent of that application. (Witkin, Cal. Evidence (2d ed. 1966), § 689(d), p. 643.)

it be said that the law converts the courtroom into a receptacle for wagons, boxes, tomb-stones, and the like, on which one's name may be written." (*Kansas Pac. Ry.* v. *Miller* (1874) 2 Colo. 442, 462, as quoted in *Keeney* v. *Odom, supra*, 534 S.W.2d at p. 412.)

■ Thus the federal and state courts as well as the commentators are in general agreement that the trial court should have discretion to decide whether to require the production of inscribed chattels. The sources differ somewhat in their articulation of the factors to be considered, but generally seem to require deliberation on the importance of examining the original and the difficulties involved in its production— the more complex the inscription, the less reliable the secondary evidence. The more critical the fact to be proved by the inscription, and the lesser the quantity and quality of other evidence to prove that fact, the greater is the importance of the inscribed chattel's production. The more difficult the production or the more inconvenience to the owner by temporary loss of the chattel, the greater must be the importance of examining the original before production is required.

We are persuaded that the above approach to the problem of inscribed chattels is appropriate for California. The broad definition of a writing in Evidence Code Section 250[4] permits the application of the best evidence rule to inscribed chattels. The provisions of the Evidence Code "are to be liberally construed with a view to effecting its objects and promoting justice." (Evid. Code, § 4; Witkin, Cal. Evidence (2d ed. 1966) § 9, pp. 11-12.) The object of the best evidence rule is "to minimize the possibilities of misinterpretation of writings. . . ." (Law Rev. Com. Comment, Evid. Code, § 1500.) Consideration of the above factors by the trial court in determining whether to require the production of an inscribed chattel will guard against the possibility of misinterpretation of the inscription by admission of secondary evidence. Where the fact to be proved is critical, the inscription lengthy, and the secondary and other evidence weak, the inscribed chattel's production should be required to insure the reliability of the fact finding process.

■ Applying this rule to the present case, we would uphold the trial court's admission of the photographs of the inscribed guns and

---

[4]Evidence Code Section 250 states: "'Writing' means handwriting, typewriting, printing, photostating, photographing, and every other means of recording upon any tangible thing any form of communication or representation, including letters, words, pictures, sounds, or symbols, or combination thereof."

knife even if the inscriptions were visible on them. The fact to be proved by the inscriptions was the burglary victim's ownership of the stolen items. This fact is a necessary element of many of the counts of which defendants were charged. (See Pen. Code, §§ 484, 459, 496.)

However, the inscriptions were simple, consisting only of the initials "J.W." If they had been visible in the photographs, those photographs would have been reliable evidence of the presence of the initials on the items since the photographs were established to have been taken by sheriff's officers in the presence of the burglary victim who identified the guns and knife depicted as his own.

Furthermore, highly probative circumstantial evidence of the burglary victim's ownership was presented. The victim reported as missing a Browning 12-gauge shotgun, a pellet gun, 7 and 8 millimeter bolt action pistols, a Stephens single-shot 12-gauge shotgun, an Infield .06 rifle, and a Buck knife. The last five items were found three days later in and around defendants' house within walking distance of the victim's home. It is highly unlikely that two neighbors would own the same unusual list of weapons. The further circumstance of one neighbor missing the weapons found in another neighbor's heater and heater closet makes it even more likely that the weapons belonged to the burglary victim. The defendants never really contested the victim's ownership, with good reason in view of the evidence.

Thus examination of the actual inscription was of little importance in this case and little danger of misinterpretation of the writing inscription existed.

Since production was unnecessary, the trial court properly decided not to deprive the victim again of his personal property.

■ Even if admission of the photographs was error, the case would not merit reversal. Such error was clearly rendered harmless by the trial court's admission without objection of the burglary victim's oral testimony as to the existence of his initials on the stolen items. That testimony having already established that the victim's initials were on the guns, the excision of photographic evidence of the initials would not have made a more favorable verdict reasonably probable. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

Defendants' other contentions may be disposed of briefly.

(1) Michael contends that his counsel was inadequate.

■ First, he contends that in the cross-examination of a confidential informant counsel did such a good job of reenforcing the prosecutor's evidence that he "drove a nail into the coffin of his own client." Trial tactics are largely a matter left to counsel and reviewing courts are loathe to second-guess counsel in such matters. This cross-examination clarified matters raised on direct and whether or not the matter should have been gone into was largely a matter addressed to the sound discretion of trial counsel. ■ So, too, is the contention that counsel was inadequate in failing to object to certain fingerprint testimony. This could not have been harmful to the defendant since the fingerprints were never matched to the defendant. In no way was Michael deprived of a potentially meritorious defense by counsel's tactics. (*People* v. *Pope* (1979) 23 Cal.3d 412 [152 Cal.Rptr. 732, 590 P.2d 859].)

■ (2) Rosemary contends that the police acted illegally in entering her home by the use of deception to purchase stolen property from her.

Here, after the burglary and after the officers discovered that some of the stolen property was in the Mastin residence, they sent a confidential informant to the residence in an undercover capacity to purchase some items. Rosemary made incriminating statements and showed the informant some of the stolen property. Under these circumstances, there was no violation of the Fourth Amendment which affords no protection to a "wrongdoer's misplaced belief that a person to whom he voluntarily confides his wrong doing will not reveal it." (*People* v. *Mack* (1977) 66 Cal.App.3d 839 [136 Cal.Rptr. 283].) Deception is necessary at times to accomplish the mission of police officers and does not by itself violate the Constitution. There is nothing inherently unlawful in the use of police deceit for the purpose of suppressing crime and apprehending criminals. (*People* v. *Metzger* (1971) 22 Cal.App.3d 338 [99 Cal. Rptr. 264].) Here, we have a willing informant who was personally known to the defendant who was suspected of engaging in criminal activity. He arranged to be invited into her home by means of deception as to his motive. He was sent in for the purpose of observing criminal activity and reporting it to the authorities. Additionally, an undercover police officer purchased guns during one of these meetings. Rosemary was even warned that the undercover agent might be an agent of the police. She nevertheless elected to do business with him. There was no violation of her Fourth Amendment rights and the denial of her motion to suppress evidence was proper.

■ (3) Rosemary contends that there is insufficient evidence of receiving since she was only found in possession of stolen property.

She was not only found in possession, she was trying to sell it and indicated that she knew it was stolen. In addition, the possession itself was somewhat suspicious inasmuch as two guns were hidden in a heater and two more were found behind the heater. These seem to be strange places to keep guns.

Judgment affirmed.

Tamura, J., and Morris, J., concurred.

A petition for a rehearing was denied March 16, 1981, and the petition of appellant Michael Mastin for a hearing by the Supreme Court was denied April 15, 1981.