[Crim. No. 38119. Second Dist., Div. Five. July 1, 1981.]

In re JAMES H., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
JAMES H., Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Steffan Imhoff, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Gary H. Hahn and Richard B. Cullather, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

HASTINGS, J.—James H. appeals from the juvenile court order of wardship (Welf. & Inst. Code, § 602) upon the finding that he committed assault with a deadly weapon upon Greg Parker (Pen. Code, § 245, subd. (a).) He was placed in the camp community program for a maximum of four years. He appeals, contending (1) that since there was no evidence presented at his adjudication hearing as to his age, the prosecutor failed to establish jurisdiction over him; (2) that his trial counsel was incompetent since he made an untimely motion pursuant to Code of Civil Procedure, § 170.6; and (3) that his continued assertion of innocence was improperly used by the trial judge to justify the camp commitment.

At about 10:45 p.m. on April 2, 1980, Gregory Parker, Bryan Hilt and Roderick Whittier were standing in front of Bryan's house when a youth, identified as appellant, approached Bryan and asked, "Don't I know you, cuz?" (There was another male on a bicycle with appellant.) Bryan said, "No" and appellant replied, "Yes, I do. You're an 8-tray," referring to a chapter of the Cripps gang. Bryan and Gregory then noticed that appellant was holding a sawed-off shotgun. Bryan started to run and appellant fired a shot towards Gregory. Gregory identified appellant as being the one who fired the shot "to the best [he could] remember" but was "not sure." Bryan, however, positively identified appellant as the person with the shotgun. Bryan also stated that he knew appellant prior to the incident and that he had seen appellant at Washington High School either a week or three weeks before the shooting.

Appellant, his mother, and his stepfather testified that appellant had been home on the night in question babysitting his two-and-one-half-year-old nephew and, therefore, could not have committed this offense.

■ Appellant argues that the juvenile court lacked jurisdiction over him because the prosecutor failed to present evidence of his age. The petition alleged that appellant was born March 20, 1963, and that the offense was committed April 2, 1980. At the detention hearing, the trial court specifically found appellant's birthdate to be as shown in the petition.

Furthermore, at the adjudication hearing, the court could properly consider the "jurisdictional facts" portion of the probation report which set forth appellant's birthdate as March 20, 1963. In 1970, in *In re Gladys R.* (1970) 1 Cal.3d 855, 860-861 [83 Cal.Rptr. 671, 464 P.2d 127], our Supreme Court held that Welfare and Institutions Code sections 701, 702, and 706 require that a juvenile court determine whether the facts of the case support the jurisdiction of the court before considering the social study prepared by the probation officer with respect to disposition of the juvenile. And in 1974, in *In re Michael V.* (1974) 10 Cal.3d 676, 683 [111 Cal.Rptr. 681, 517 P.2d 1145], the court held that *Gladys R.*, does not preclude the court from reading the "jurisdictional facts" portion of the probation report before making such determination. At that time, under Welfare and Institutions Code section 701, the court could consider "any matter or information relevant and material to the circumstances or acts which are alleged to bring him within the jurisdiction of the juvenile court."

In 1976, these words were deleted and section 701 was amended to provide that "[t]he admission and exclusion of evidence shall be pursuant to the rules of evidence established by the Evidence Code and by judicial decision. Proof beyond a reasonable doubt supported by evidence, legally admissible in the trial of criminal cases, must be adduced to support a finding that the minor is a person described by Section 602 . . . ." Since the probation report is a business record, and, as such, admissible into evidence as an exception to the hearsay rule (Evid. Code, §§ 1270, 1271) the "jurisdictional facts" portion of the report may, under the new provisions of section 701, be considered by the juvenile court in determining whether the court has jurisdiction. (See also Advisory Com. Comment to Cal. Rules of Court, rule 1355, citing Evid. Code, §§ 452, 1280, 1281.) Additionally, appellant's counsel stated, both at the detention hearing and during examination of appellant's

mother at the adjudication hearing, that appellant was "a minor." Further, the evidence at the adjudication hearing showed that Bryan Hilt and appellant had attended junior high school together and that Bryan did not start to high school until 1979.

Under these circumstances, it cannot be said that the prosecution failed to establish that appellant was below the age of 18 at the time of the offense and was thus within the jurisdiction of the juvenile court. (Welf. & Inst. Code, § 602.)

■ Citing *People* v. *Pope* (1979) 23 Cal.3d 412, 425 [152 Cal.Rptr. 732, 590 P.2d 859] and *People* v. *Frierson* (1979) 25 Cal.3d 142, 160 [158 Cal.Rptr. 281, 599 P.2d 587], appellant argues that he was denied the effective assistance of counsel due to trial counsel's untimely challenge pursuant to Code of Civil Procedure section 170.6.

On the morning of April 29, 1980, appellant appeared in department 201, of the master calendar for juvenile matters. The case was then assigned to department 206 for adjudication. Appellant's attorney, however, did not file an affidavit of prejudice or motion to disqualify at that time, as is required by subdivision 2, section 170.6 of the Code of Civil Procedure. Instead, he waited until the case had been transferred to department 206, at which time the presiding judge found the motion to be untimely. Inasmuch as the denial of the challenge was proper, the trial judge, to whom the matter was assigned, had the authority to proceed with the trial of the action.

It is true that a reasonably competent trial attorney should be aware of the formal requirements necessary to invoke the Code of Civil Procedure 170.6 challenge. However, under *Pope* and *Frierson*, more than mere negligence is required. Appellant must show "that trial counsel failed to act in a manner to be expected of reasonably competent attorneys acting as diligent advocates. In addition, appellant must establish that counsel's acts or omissions *resulted in the withdrawal of a potentially meritorious defense.*" (*People* v. *Pope, supra*, at p. 425, italics added.)

Here, appellant has not pointed to any withdrawal or loss of a "potentially meritorious defense" by reason of his counsel's failure to properly invoke the Code of Civil Procedure section 170.6 challenge. Further, appellant has not shown that he suffered any prejudice whatso-

ever as a result of his counsel's action. His defense was one of alibi, and it was fully presented by himself, his mother and stepfather.

Under the circumstances of this case, the failure to properly invoke the Code of Civil Procedure section 170.6 challenge was not prejudicial in the sense that it brought about a miscarriage of justice under article VI, section 13 of the California Constitution or that the conviction must be reversed since the error, if any, was harmless beyond a reasonable doubt. (*Chapman* v. *California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711, 87 S.Ct. 824, 24 A.L.R.3d 1065].)

In the recent case of *People* v. *St. Andrew* (1980) 101 Cal.App.3d 450 [161 Cal.Rptr. 634], the court determined that "trial counsel should have been aware of the formal requirements [of section 170.6], and that his failure to assert the motion in proper form constituted a departure from the standards of professional competency applicable under *Pope.*" (*Id.* at p. 456.) However, nothing in the *St. Andrews* opinion suggests to us that the court would have reversed solely because of mishandling of the section 170.6 challenge.

Defendant contends that his continued assertion of innocence was improperly used to justify removing him from his home and placing him in a camp facility.

The decision of the juvenile court or superior court may be reversed on appeal only upon a showing that the court abused its discretion in its commitment of the minor. A reviewing court must indulge in all reasonable inferences to support the findings of the juvenile court, and such findings will not be disturbed on appeal when there is substantial evidence to support them. (*In re Michael R.* (1977) 73 Cal.App.3d 327, 333 [140 Cal.Rptr. 716]; *In re Clarence B.* (1974) 37 Cal.App.3d 676, 682 [112 Cal.Rptr. 474].) If a commitment conforms to the general purpose of the Juvenile Court Law,[1] the disposition will be deemed to fall within the sound discretion of the juvenile court. (*In re Todd W.* (1979) 96 Cal.App.3d 408, 417 [157 Cal.Rptr. 802]; Welf. & Inst. Code, § 202.)

---

[1]The general statutory purpose of "Juvenile Court Law" can be found in Welfare and Institutions Code section 202 which states: "(a) The purpose of this chapter is to secure for each minor under the jurisdiction of the juvenile court such care and guidance, preferably in his own home, as will serve the spiritual, emotional, mental, and physical welfare of the minor and the best interests of the state; to protect the public from criminal conduct by minors; to impose on the minor a sense of responsibility for

■ Here, the probation report, which the court considered, revealed that earlier petitions against appellant had been sustained which alleged robbery and possession of live ammunition; that appellant was on probation at the time of the offense; that appellant was involved in gang-related offenses and his gang involvement made him a clear and present danger to the community; that camp placement would give appellant a beneficial opportunity for work experience; that removal from home would in itself be beneficial since the overprotectiveness of appellant's mother was in fact counterproductive. The probation officer felt that the gravity of the present offense warranted a commitment to the California Youth Authority under most circumstances, however, since appellant had not had the benefit of placement outside of the home, the CYA recommendation would be deferred, and concluded that appellant should be placed in the camp community placement program.

The juvenile court agreed to this disposition, saying, "I feel that because of the seriousness of this offense and the minor's past history, that the recommendation of the probation officer should be followed."

Upon further questioning by appellant's counsel, the court said: "I think I have indicated, counsel, because of the seriousness of this offense, because of his previous record, and because of the fact that the probation officer has decided between camp and Youth Authority, that this is an appropriate disposition. [¶] And also because of the fact that the minor apparently is still not willing to accept responsibility for his actions. He appears to have no remorse, he still maintains he did not do the things he was charged with, still maintains he had nothing to do with it. I feel under these circumstances, this is an appropriate disposition."

Clearly, from the record, the court did not abuse its discretion in ordering appellant placed in the camp community program. Appellant's continued assertion of innocence was not a significant factor in the determination made by the juvenile court. The primary considerations of

his own acts; to preserve and strengthen the minor's family ties whenever possible, removing him from the custody of his parents only when necessary for his welfare or for the safety and protection of the public; and, when the minor is removed from his own family, to secure for him custody, care, and discipline as nearly as possible equivalent to that which should have been given by his parents. This chapter shall be liberally construed to carry out these purposes. [¶] (b) The purpose of this chapter also includes the protection of the public from the consequences of criminal activity, and to such purpose probation officers, peace officers, and juvenile courts shall take into account such protection of the public in their determinations under this chapter."

the court were of the seriousness of the offense, appellant's previous record, and the recommendation made by the probation officer. No miscarriage of justice occurred. (*In re Clyde H.* (1979) 92 Cal.App.3d 338, 347 [154 Cal.Rptr. 727].)

The judgment (order of commitment) is affirmed.

Kaus, P. J., and Ashby, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 26, 1981. Kaus, J., did not participate therein.