[Crim. No. 22474. Mar. 17, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
JEROME FOSSELMAN, Defendant and Appellant.

574

**Counsel**

Curtis G. Oler for Defendant and Appellant.

Quin Denvir, State Public Defender, Peter R. Silten and Philip M. Brooks, Deputy State Public Defenders, as Amici Curiae on behalf of Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, William D. Stein, Assistant Attorney General, Robert R. Granucci and Michael I. Mintz, Deputy Attorneys General, for Plaintiff and Respondent.

**Opinion**

**MOSK, J.**—Defendant appeals from a judgment convicting him of assault with a deadly weapon, false imprisonment, and battery. He contends that the judgment is not supported by substantial evidence and that he was deprived of his right to the effective assistance of counsel because of his attorney's failure to

object to alleged misconduct by the prosecutor. No reversible error appears on either ground.

We also review an order denying defendant's motion for new trial. (Pen. Code, § 1237, subd. 1.) Because the trial court mistakenly believed it lacked authority to grant a new trial on the ground of inadequate representation of counsel, it declined to rule on the merits of the motion. We conclude that such authority exists, and therefore reverse and remand the proceeding to the trial court for a new hearing on the motion for new trial.

Defendant was employed on the swing shift, and after completing work at 12:30 a.m. went to a coworker's home and drank two beers. About 5 a.m. he attempted to visit a female friend. She had recently moved, however, and another woman had taken her place in the apartment. The new tenant was disturbed at being awakened by defendant's insistent demand for entry, and threatened to call the police unless he left. Later, she did call the police when she heard the living room screen being removed; upon arrival, the police found pry marks and broken latches on the screen.

About 6:35 a.m. Carla Z. left her parents' home in San Jose to board a bus. As she walked down the street defendant approached her from behind, said his name was Michael, and tried to strike up a conversation. She quickened her step and replied she was in a hurry. Defendant kept pace for a block and again approached her in front of a store. He placed his hand on her shoulder, put a knife to her back, and told her to "get behind the building." She reached behind her back and felt the knife, which slightly cut her middle finger. As defendant seized her jacket she pulled away, lost her balance, and fell to her knees. She then arose and made her way to the middle of the road.

Ms. Z. stopped the first car to appear. Defendant momentarily remained on the sidewalk, but ran off when a male passenger in the car, Robert Lasko, climbed out and pursued him. While a woman passenger walked Ms. Z. to a nearby gas station to call the police, two other women in the car made a U-turn and drove toward a theater parking lot into which defendant had fled. The women in the car, joined by Lasko on foot, chased defendant around the parking lot and back into the street. They finally halted him, and held him by his hands as he caught his breath. Defendant said he had done nothing wrong and began to walk away, followed by Lasko and the women. As defendant turned around to face them, Lasko seized his shoulders and attempted to knee him in the groin. Defendant struck Lasko and fractured his jaw. The women helped to wrestle defendant to the ground, where they sat on him until a gas station attendant arrived and tied him up with jumper cables.

The police found defendant's knife near the parking lot. They arrested and searched him, and uncovered a knife sheath on his person. He later gave a taped

statement in which he admitted having the knife, partially removing it from the sheath so that Ms. Z. could see it, and pushing her. He denied taking the knife fully out of the sheath; he claimed rather that the people who chased him had torn off his jacket and thrown the knife away.

Defendant was charged with attempted burglary (Pen. Code, §§ 664, 459), assault with a deadly weapon (*id.*, § 245, subd. (a)), false imprisonment (*id.*, § 236) with an enhancement for the use of a deadly weapon (*id.*, § 12022, subd. (b)), and battery causing serious bodily injury (*id.*, §§ 242, 243, subd. (d)). At the conclusion of the People's case, the court *sua sponte* ordered entry of a judgment of acquittal on the attempted burglary charge (Pen. Code, § 1118.1) because there was insufficient evidence of defendant's felonious intent at the time he removed the window screen. The jury returned verdicts of guilt on the remaining charges.

Defendant retained different counsel and moved for a new trial pursuant to Penal Code section 1181, on the ground of constitutionally inadequate representation by his former attorney. The substituted counsel conceded that section 1181 does not expressly provide for a new trial on the basis of ineffective representation, but contended that the court possessed inherent power to grant a new trial on that ground because defendant had been denied a fair trial. The court ruled that section 1181 precluded granting a new trial on the basis of inadequate counsel, and therefore denied the motion. Nevertheless, the court was so concerned about the "very cogent issue" of the adequacy of counsel that it took the unusual step of inviting defendant to apply for bail pending a determination of his appeal, and then granting that application.

, Defendant first contends the evidence is insufficient to support his convictions of assault with a deadly weapon, false imprisonment, and battery. "When the sufficiency of the evidence is challenged on appeal, the court must review the whole record in the light most favorable to the judgment to determine whether it contains substantial evidence—i.e., evidence that is credible and of solid value—from which a rational trier of fact could have found the defendant guilty beyond a reasonable doubt." (*People v. Green* (1980) 27 Cal.3d 1, 55 [164 Cal.Rptr. 1, 609 P.2d 468], and cases cited.) (5) In applying this test, we must "presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." (*People v. Mosher* (1969) 1 Cal.3d 379, 395 [82 Cal.Rptr. 379, 461 P.2d 659]; *People v. Reilly* (1970) 3 Cal.3d 421, 425 [90 Cal.Rptr. 417, 475 P.2d 649].)

 Defendant admitted shoving Ms. Z. He maintains, however, that he is not guilty of assault with a deadly weapon, but merely of simple assault. He cites his tesimony that he never exposed the knife blade but only showed her the handle, assertedly in a curious attempt to convince her that he was "not crazy." ·

Ms. Z. testified, by contrast, that the knife was put to her back and that she was slightly cut by it. The jury reasonably chose to believe her testimony, and we will not disturb that determination.

■ Similarly, we must uphold the guilty finding on the charge of felony false imprisonment. By his own admission defendant held Ms. Z. against her will; the jury further found on the basis of her testimony that in doing so he put a knife to her back. The evidence thus supports the implied finding that his conduct constituted an "unlawful violation of [her] personal liberty" (Pen. Code, § 236; see *People* v. *Agnew* (1940) 16 Cal.2d 655, 659 [107 Cal.Rptr. 601]; *People* v. *Haney* (1977) 75 Cal.App.3d 308, 313 [142 Cal.Rptr. 186]), and that the act was felonious because it was effected by "violence" or "menace" within the meaning of Penal Code section 237 (*People* v. *Arvanites* (1971) 17 Cal.App.3d 1052, 1059-1060 [95 Cal.Rptr. 493]).

■ Defendant also contests the finding that in breaking Lasko's jaw he committed battery and caused serious bodily injury. The claim is refuted by the fact that Lasko's jaw was wired shut for three weeks after defendant hit him. (See Pen. Code, § 243, subd. (e)(5).)

A more complex question is whether defendant's act of striking Lasko was justified on the ground of self-defense. Of course, there is no right to "defend" against a valid arrest. (*People* v. *Score* (1941) 48 Cal.App.2d 495, 498 [120 P.2d 62].) Hence, if Lasko properly sought to arrest defendant, his grievance must be rejected. A citizen may arrest another if a felony has in fact been committed and he has reasonable cause to believe that the person to be arrested committed it. (Pen. Code, § 837, subd. 3.) As we have explained, defendant did commit a felony; further, Lasko had reasonable cause to believe defendant was the culprit. Thus, when Lasko first restrained him by holding his arms, it was defendant's duty not to resist. (*People* v. *Garcia* (1969) 274 Cal.App.2d 100, 105 [78 Cal.Rptr. 775]; *People* v. *Score, supra*, 48 Cal.App.2d at p. 498.) Instead, he pulled free and began to walk away from the scene. Lasko was entitled to use reasonable force to detain him (Pen. Code, § 835), and the jury inferentially found that Lasko's attempt to knee defendant in the groin was reasonable under the circumstances. Although we do not intend to encourage such martial methods of effecting a citizen's arrest, it appears on these facts that the jury could reasonably have rejected defendant's claim of self-defense. (Cf. *People* v. *Newsome* (1921) 51 Cal.App. 42, 48-49 [195 P. 938].)

Defendant next complains of misconduct by the prosecutor. The record demonstrates that in cross-examining defendant the prosecutor resorted to inflammatory rhetoric, stated his personal belief based on facts not in evidence, brought out inadmissible character evidence, and attempted to arouse sexual prejudice in the predominantly female jury.

Defendant cites as one example of misconduct the prosecutor's description of him as "stinking of alcohol." Because a witness testified at trial that she smelled alcohol on defendant's breath, we cannot fault the prosecutor for this characterization. However, the record demonstrates several other instances of improper behavior by the prosecutor. For example, he stated his belief that defendant wanted to rape Ms. Z., and accused him of being an "animal . . . out to get somebody that morning." He also alluded to a "chemical test," and implied that defendant had failed a sobriety analysis. In addition, he referred to an unproved prior incident in which defendant had apparently been arrested for drunkenness. While questioning defendant about unrelated matters, he suddenly asked, "And incidentally, this isn't the first time you have testified, is it?" The insinuation was that defendant had been tried on previous criminal charges, although no proof of such charges was offered. Finally, in his closing argument to the jury the prosecutor characterized the defense as based on the premise that the victim was a "typical female who makes things up."

In its ruling on defendant's motion for a new trial the court recalled that the prosecutor's cross-examination of defendant, including the instances of questionable conduct discussed above, proceeded virtually without objection by defense counsel, and that at one point the court felt it necessary to call counsel into chambers and ask why he was not objecting. The court apparently received no satisfactory response to its inquiry, because it stated in its ruling on the motion that it was still very "concerned as to the question of adequacy of counsel."

A prosecutor may "vigorously argue his case and is not limited to 'Chesterfieldian politeness' " (*People* v. *Bandhauer* (1967) 66 Cal.2d 524, 529 [58 Cal.Rptr. 332, 426 P.2d 900]), and he may "use appropriate epithets warranted by the evidence." (*People* v. *Mitchell* (1966) 63 Cal.2d 805, 809 [48 Cal.Rptr. 371, 409 P.2d 211], disapproved on other grounds in *People* v. *Green, supra,* 27 Cal.3d 1, 33-34; accord, *People* v. *Hayes* (1971) 19 Cal.App. 3d 459, 470 [96 Cal.Rptr. 879].) Nevertheless, we cannot condone the prosecutor's inflammatory characterization of defendant on the basis of the evidence in this case. (*People* v. *Jones* (1970) 7 Cal.App.3d 358, 362-363 [86 Cal.Rptr. 516]; *People* v. *Mitchell, supra,* at pp. 809-810.) Nor can we approve of his statements of personal belief, based on purported facts not in evidence, that defendant planned to rape Ms. Z. (*People* v. *Love* (1961) 56 Cal.2d 720, 730 [16 Cal.Rptr. 777, 17 Cal.Rptr. 481, 366 P.2d 33, 809], disapproved on other grounds in *People* v. *Morse* (1964) 60 Cal.2d 631, 637-638, fn. 4 [36 Cal.Rptr. 201, 388 P.2d 33, 12 A.L.R.3d 810].) We find similarly distressing the use of inadmissible character evidence. (*People* v. *Sawyer* (1967) 256 Cal.App.2d 66, 77 [63 Cal.Rptr. 749].)

Viewing each of the various instances of the prosecutor's conduct in isolation, and without expressing approval of any of them, we might not be com-

pelled to label his performance as grossly improper. Considering them as a whole, however, we must conclude that he did indeed commit misconduct.

■ Yet generally such errors are deemed waived if the defendant does not object to them at trial. (*People* v. *Green* (1980) *supra,* 27 Cal.3d 1, 34.) He may raise the issue for the first time on appeal only if the trial court could not have cured the harm flowing from the misconduct by a prompt admonition to the jury. (*Ibid.*) ■ In the present case the harm could have been cured by timely warnings, and hence defendant may not now be heard to complain.

Defendant seeks to avoid the bar of *Green* by asserting that the failure to object to the misconduct deprived him of the effective assistance of counsel. The People contend that the contemporaneous objection requirement of *Green* bars any consideration of a "waived" issue on appeal. In other instances in which the contemporaneous objection rule applies, however, the courts have permitted defendants to raise for the first time on appeal the "waived" issue in the context of an ineffective assistance claim. (*People* v. *Collie* (1981) 30 Cal.3d 43, 49-50 [177 Cal.Rptr. 458, 634 P.2d 534] [failure to claim privilege]; *People* v. *White* (1981) 118 Cal.App.3d 767, 775 [173 Cal.Rptr. 575] [failure to move to set aside information]; *People* v. *Childs* (1980) 112 Cal.App.3d 374, 385 & fn. 4 [169 Cal.Rptr. 183] [failure to object to hearsay] (disapproved on other grounds in *People* v. *Ramos* (1982) 30 Cal.3d 553, 589 [180 Cal.Rptr. 266, 639 P.2d 908], and *People* v. *Hernandez* (1981) 30 Cal.3d 462, 468 [179 Cal.Rptr. 239, 637 P.2d 706]).) It follows that defendant may obtain a reversal if the record demonstrates that he was denied the effective assistance of counsel.

In *People* v. *Pope* (1979) 23 Cal.3d 412, 425 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1], we set out a two-step test for determining the adequacy of counsel: "[Defendant] must show that trial counsel failed to act in a manner to be expected of reasonably competent attorneys acting as diligent advocates. In addition, [he] must establish that counsel's acts or omissions resulted in the withdrawal of a potentially meritorious defense." We turn to the question whether counsel failed to meet this test because he did not object at trial to the prosecutor's misconduct.

■ Reviewing courts will reverse convictions on the ground of inadequate counsel only if the record on appeal affirmatively discloses that counsel had no rational tactical purpose for his act or omission. In all other cases the conviction will be affirmed and the defendant relegated to habeas corpus proceedings at

which evidence dehors the record may be taken to determine the basis, if any, for counsel's conduct or omission. (*Id.* at pp. 425-426.)

■ Throughout most of the trial herein, defense counsel effectively represented his client. He cross-examined the People's witnesses and put on four witnesses for the defendant. Moreover, there may have been plausible tactical reasons supporting counsel's failure to object. He may have believed that individual objections would have exacerbated the problem by affording the prosecutor an opportunity to elaborate and explain his comments. More likely, he may have determined that the prosecutor's overbearing tactics would arouse sympathy and thus serve defendant's ultimate advantage. Whatever his motive, the record does not establish that counsel had no reasonable basis for refraining from objection. If defendant wishes to pursue the point, therefore, he may do so by petition for habeas corpus. (*Id.* at p. 426.)

■ Finally, we consider whether the trial court erred in declining to consider the motion for a new trial on the ground of ineffective assistance of counsel. As noted above, the court expressed concern that counsel may have been inadequate, but concluded that it lacked statutory authority to order a new trial on that basis.

Penal Code section 1181 enumerates nine grounds for ordering a new trial. It is true the section expressly limits the grant of a new trial to only the listed grounds, and ineffective assistance is not among them. Nevertheless, the statute should not be read to limit the constitutional duty of trial courts to ensure that defendants be accorded due process of law. "Upon the trial judge rests the duty of seeing that the trial is conducted with solicitude for the essential rights of the accused." (*Glasser* v. *United States* (1942) 315 U.S. 60, 71 [86 L.Ed. 680, 699, 62 S.Ct. 457]; see also *Powell* v. *Alabama* (1932) 287 U.S. 45, 52 [77 L.Ed. 158, 162, 53 S.Ct. 55, 84 A.L.R. 527]; *People* v. *Davis* (1973) 31 Cal. App.3d 106, 110 [106 Cal.Rptr. 897]; Schwarzer, *Dealing With Incompetent Counsel—The Trial Judge's Role* (1980) 93 Harv.L.Rev. 633, 639, fn. 27, 649.) The Legislature has no power, of course, to limit this constitutional obligation by statute. (*People* v. *Davis, supra,* 31 Cal.App.3d at p. 110.) It is undeniable that trial judges are particularly well suited to observe courtroom performance and to rule on the adequacy of counsel in criminal cases tried before them. (See *McMann* v. *Richardson* (1970) 397 U.S. 759, 771 [25 L.Ed. 2d 763, 773, 90 S.Ct. 1441].) Thus, in appropriate circumstances justice will be expedited by avoiding appellate review, or habeas corpus proceedings, in favor of presenting the issue of counsel's effectiveness to the trial court as the basis of a motion for new trial. If the court is able to determine the effectiveness

issue on such motion, it should do so. The court should have done so in the case at bar.[1]

For the guidance of the court on remand, we clarify the application of *Pope* to the facts of this case. *Pope* declares that to show ineffective assistance of counsel a defendant must prove in part that his attorney's deficient representation resulted in the "withdrawal of a potentially meritorious defense." (23 Cal.3d at p. 425.) This language grew out of the particular facts of *Pope,* a case in which counsel's actions were alleged to have deprived the defendant of the defense of diminished capacity. (See also *People* v. *Jackson* (1980) 28 Cal.3d 264 [168 Cal.Rptr. 603, 618 P.2d 149]; *People* v. *Frierson* (1979) 25 Cal.3d 142 [158 Cal.Rptr. 281, 599 P.2d 587].)

Some of our Courts of Appeal have applied the "potentially meritorious defense" standard strictly, and have rejected ineffectiveness claims on the ground that no "defense" was actually lost. (*People* v. *Mastin* (1981) 115 Cal. App.3d 978, 987 [171 Cal.Rptr. 780]; *People* v. *Wall* (1980) 114 Cal.App. 3d 15, 22 [170 Cal.Rptr. 522]; *People* v. *Reeves* (1980) 105 Cal.App.3d 444, 452 [164 Cal.Rptr. 426]; *People* v. *Demery* (1980) 104 Cal.App.3d 548, 561 [163 Cal.Rptr. 814].) However, most courts have implicitly employed a broader test of prejudice. For example, in *People* v. *Haskett* (1982) 30 Cal.3d 841, 854-855 [180 Cal.Rptr. 640, 640 P.2d 776], the defendant claimed ineffective counsel because of his attorney's failure to move for a mistrial for evidentiary error. We considered the merits of his claim and noted that such an omission, if unreasonable, would "automatically satisfy" the "potentially meritorious defense" requirement of *Pope. (Id.* at p. 855, fn. 4.) In *People* v. *Lanphear* (1980) 26 Cal.3d 814, 828, footnote 6 [163 Cal.Rptr. 601, 608 P.2d 689], we "assumed" for purposes of analysis that counsel's failure to object to other-crimes evidence deprived the defendant of a potentially meritorious defense. Similarly, in *People* v. *Nation* (1980) 26 Cal.3d 169, 181 [161 Cal.Rptr. 299, 604 P.2d 1051], we found counsel's performance inadequate because of his failure to object to critical identification evidence.

---

[1]In *People* v. *Serrato* (1973) 9 Cal.3d 753, 760 [109 Cal.Rptr. 65, 512 P.2d 289], we held that a trial court may not, consistently with due process, modify a verdict and thereby convict a defendant of a crime not charged and not included in the charged offense. Having so held, it then became necessary to address the defendant's contention that retrial was barred by double jeopardy, on the theory that the trial court's attempted modification amounted to an implied acquittal of the charged offense. In the course of rejecting this assertion, we noted in dictum that "the power of a California trial court to hear and decide a motion for a new trial in a criminal case is strictly limited to the authority granted by Penal Code section 1181." We were not confronted in *Serrato* with the question of whether a trial court may consider inadequate assistance of counsel and a denial of due process on a motion for a new trial. To the extent that the dictum in *Serrato* conflicts with our decision today, it is disapproved.

In addition, in the course of reviewing claims of ineffectiveness many Courts of Appeal have considered the result of counsel's performance even though no defense was lost by his conduct. Those decisions that forthrightly address the problem hold that a defendant may satisfy the second prong of the *Pope* test by showing simply that he was *prejudiced* by his attorney's inadequate performance. Thus, the Court of Appeal has observed that "recent decisions on the subject indicate that tactical acts or omissions which seriously prejudice a defendant's case may constitute the withdrawal of a potentially meritorious 'defense'" within the meaning of *Pope. (People* v. *Zimmerman* (1980) 102 Cal.App.3d 647, 658-659 [161 Cal.Rptr. 669] [defendant was prejudiced by his counsel's failure to object to impeachment evidence]; see also *In re James H.* (1981) 121 Cal.App.3d 268, 273 [175 Cal.Rptr. 141] [defendant was not prejudiced by his attorney's failure to properly move to disqualify the trial judge]; *People* v. *McClindon* (1980) 114 Cal.App.3d 336, 341 [170 Cal.Rptr. 492] [counsel's failure to make a stipulation did not prejudice defendant]; *People* v. *Ellers* (1980) 108 Cal.App.3d 943, 952 [166 Cal.Rptr. 888] [defendant's case was "seriously damaged" by his attorney's failure to move to suppress evidence].)

 We conclude that in cases in which a claim of ineffective assistance of counsel is based on acts or omissions not amounting to withdrawal of a defense, a defendant may prove such ineffectiveness if he establishes that his counsel failed to perform with reasonable competence and that it is reasonably probable a determination more favorable to the defendant would have resulted in the absence of counsel's failings. (*Pope, supra,* 23 Cal.3d at p. 425; *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

The judgment is reversed. The cause is remanded to the superior court with directions to vacate the order denying the motion for new trial and to reconsider that motion in light of the opinion herein. If the motion is denied, the court shall again impose sentence.

Bird, C. J., Richardson, J., Kaus, J., Broussard, J., Reynoso, J., and Warren, J.,* concurred.

On April 20, 1983, the opinion was modified to read as printed above.

---

*Assigned by the Chairperson of the Judicial Council.